# COÖS.

## JANUARY TERM, A. D. 1858.

---

### HORNE v. THE ATLANTIC & ST. LAWRENCE RAILROAD.

The owner of land over which a railroad is constructed has no right of action against the railroad company for damages resulting from the want of necessary farm-crossings and cattle-passes, unless it appears that the company have agreed to provide them, or that the land-owner has made application to three justices of the peace, and obtained their report, determining where and within what time such crossings and passes shall be made, agreeably to the provisions of sec. 5, chap. 593, statutes of 1850.

CASE, for that the plaintiff, on the 1st day of May, 1851, and from that time to the date of the writ, the 6th day of October, 1854, was possessed of and in the occupation of a certain farm in Milan; that the defendants were possessed and in the occupation of a railroad, passing across said farm, leaving portions thereof on either side of the railroad; that the defendants ought to have made and maintained all necessary cattle-passes and farm-crossings for the convenience and safety of the plaintiff, so that he might pass and repass across said railroad from one part of said farm to the other; that the defendants, well knowing the premises, neglected and refused, during all said time, to make and maintain such passes and crossings as are necessary for the convenience and safety of the plaintiff; that they have constructed but one pass over the railroad, and that of great height, to wit., fourteen feet; whereby they have not regarded their duty in this behalf, and the plaintiff has thereby been prevented

from using his farm in as full, ample, and convenient manner as he ought.

Plea, the general issue.

It appeared in evidence that the defendants' railroad was laid out and located about September, 1851, by the railroad commissioners, and the land damages were awarded and paid to one Roberts, the owner of the farm; that no damages were awarded to the plaintiff, though he was then and ever since has been in possession of the farm under some arrangement with the owner, by which he was to have the rents and profits at the time of laying out the railroad, and from year to year since, but the precise nature of the plaintiff's tenancy did not appear, except as above stated. It further appeared, that no cattle-passes or farm-crossings were laid out by the commissioners, or otherwise, or in any way provided by the company, except as aforesaid.

The court instructed the jury, for the purposes of the trial, that the plaintiff, upon the facts proved, was entitled to recover, to which the defendants excepted. The jury, by consent of the defendant, returned a verdict for the plaintiff, which the defendant moves the court to set aside; and it is agreed by the parties that in case the verdict can be sustained, the damages are to be assessed by a jury, or otherwise, as may be agreed.

*G. C. Williams,* for the plaintiff.

The only question in this case is, whether an action lies for the injuries complained of, or whether the act of 1850, chap. 593, sec. 5, gives the only remedy, or takes away the remedy which might have existed before the passage of the act. The duty to make and maintain all necessary passes and crossings is imposed upon the company by the act of 1850, if it did not rest upon them before. The reasoning of the court in *Dean* v. *Sullivan Railroad,* 22 N. H. (2 Foster) 316, in reference to the duty of the company to maintain fences, applies equally in reference to passes. If this is a new duty, first imposed by this statute, the general principle, applicable in some cases, that where such new duty is imposed, and a remedy provided by the

same statute for its neglect, the party injured is confined to the statute remedy, has no application to this case, because the principle is applied only where the statute remedy is coëxtensive with the injury. If the statute gives only a partial remedy, the party injured has his remedy at common law for the excess. *Troy* v. *Cheshire Railroad*, 23 N. H. (3 Foster) 83. The remedy here is not general, but limited to a fine on indictment. In the case of *Dean* v. *Sullivan Railroad*, the court say the remedy provided is limited to the single object of obtaining compensation for building the fence, and is not, therefore, general, as it contains no provision for the payment of damages that may have already been incurred. The provision of the statute in reference to passes is not even as extensive as that in reference to fences. It does not provide any remedy in damages to the party injured, but only a public penalty by way of fine. It contains no provision for adjusting the damages that have already resulted, nor for those which may result during the pendency of the application and the sixty days allowed by the statute, and it gives a remedy only to the land-owner.

The plaintiff is not land-owner, but is in possession as tenant, and sustains damage during the continuance of his term; and unless he has an action at law, he is remediless.

But the statute is only in affirmance of the common law. By a proper extension of legal principles to new cases, arising from the construction of railroads, this duty of providing proper passes and crossings from one part of a farm to another, so that it might be enjoyed consistently with the rights of the railroad company, in as ample manner as before, would seem to rest on the company. This is intimated though not expressly decided in *Dean* v. *Sullivan Railroad*, and in *March* v. *Portsmouth and Concord Railroad*, 19 N. H. 378. If the duty is one resting upon the company at common law, there can be no pretence that the common law right is abridged by the statute.

*Burns & Fletcher*, for the defendant.

SAWYER, J.  By the provisions of sec. 5, chap. 593, statutes of 1850, railroad corporations are required to make and maintain all necessary cattle-guards and passes, and farm-crossings, for the convenience and safety of the land-owner.  The plaintiff, in the institution of this suit, proceeds upon the ground that the defendants have neglected to perform this duty in reference to his land ; and, having suffered special damages from the neglect, he is entitled to maintain an action therefor.  That corporations, like natural persons, upon whom a duty is imposed, are liable to an action at the suit of the party suffering actual damage from the neglect to perform the duty, as a general proposition, is undoubtedly correct ; and it may be conceded in this case that if the defendants have failed to perform the duty enjoined upon them by this provision of the statute, in the construction of the necessary passes and crossings contemplated by it, and the plaintiff has sustained damage by reason of their failure, they are liable in this form of action.  No mode of proceeding is prescribed in this or any other enactment, as the remedy of the land-owner, for his damages arising from such neglect, and he would seem to be remediless, unless he may resort to the appropriate common law remedy — his writs of trespass on the case. It is assumed, upon the grounds presented in the argument by the counsel for the plaintiff, that the principle, recognized in all the authorities, that where the statute confers a new right, and prescribes the mode of enforcing it, the statute remedy alone is to be pursued, has no application here ; and it is also assumed, upon the case presented, that the plaintiff has sustained actual damages from the want of passes and crossings necessary for the safe and convenient use of the farm, and that his possession and occupation under the legal owner are sufficient to constitute him the land-owner, within the meaning, and, as such, entitled on that ground to maintain the action, although the nature of his tenancy does not appear.  Upon this point a question might well be made ; and if the decision of it were necessary in this case, it would deserve further consideration.  For the purpose of reaching what is to be regarded as a more important question in the

case, it is assumed that the plaintiff stands well upon these points, without, however, intending to intimate an opinion upon them. In the argument for the plaintiff it is contended that he has the right to maintain the action, not merely on the ground that he is to be regarded as standing in the place and sustaining the relation of land-owner, but irrespective of the statutory provision upon the ground that prior to the statute the corporation, in taking land for their railroad, are to be considered as holding it subject to the burthen and obligation on their part to construct their road in such manner as to give to those occupying the land all such reasonable facilities for crossing as the nature and circumstances of the case may justify them in requiring. This view is suggested in *March* v. *Portsmouth & Concord Railroad*, 19 N. H. 378, and in *Dean* v. *Sullivan Railroad*, 22 N. H. (2 Foster) 321, cited in the argument. But whatever may be the interest or right of the party claiming damages, for want of these facilities, it must be an interest or right in virtue of his tenancy or occupation of the land, and the damages must result from his inability to use and improve it as advantageously as he might have done if the facilities had been furnished. Whatever right of action accrues against the company for their neglect in this respect, it attaches to the party suffering damage from it, in his character as tenant or occupant of the land. For the purposes of the present inquiry in reference to his remedy by action, the occupant, whatever may be the nature of his tenancy, may be regarded as the land-owner. He can have no other or greater rights in this respect than the land-owner himself. Assuming, therefore, that the plaintiff has the right of action as land-owner, the question arises, what are the passes, guards and crossings which are to be considered as necessary, within the meaning of the statute ? Are they such as, without application by the land-owner to the corporation for their construction, or notice to them in any form, of the necessity for them, in view of the situation of the land and the mode of occupation, may be shown by the land-owner by evidence to the jury, upon the trial, to be requisite for his convenience and safety in the use of the

land ? In other words, may the land-owner lie by while the rail-road is in process of construction, and the corporation are making such arrangements as may appear to them to be sufficient and suitable for his accommodation, and when they are completed institute a suit against them for neglecting to furnish other conveniences, for which he has made no claim, and of the need of which they may have had no knowledge ? The plaintiff's case stands upon this ground and it can be sustained only by construing the provision of the statute as meaning that the corporation are to be held to inquire and ascertain the precise situation of every parcel of land through which their road runs, the mode of occupation and all the circumstances in connection with it upon which depend the proper construction of the passes, &c., in reference to their number, kind and location, and to construct them without any action or claim on the part of the land-owner, whether, in fact, he may require them or not, and at the peril of a suit for damages if in any respect they shall fail to do all which he may be able to satisfy a jury they ought to have done.

The object of the statute is obviously to secure to the land-owner, at the expense of the corporation, such reasonable facilities for the use and improvement of the different parcels of land lying on opposite sides of the railroad, by means of passes and crossings from one to the other, as his convenience and safety may require. What these reasonable facilities may be which are thus required, must depend upon a variety of considerations, connected with the situation of the land and of the railroad in its course through it, the mode of occupation, and the practicability and comparative expense of the different modes of crossing, whether by a bridge over the road, a crossing at grade, or a pass under it ; all going to show what number of passes or crossings are needed, where they should be located, and how constructed. For the proper determination of these matters, the plans and purposes of the land-owner, and his arrangements for the management of the land, are necessary to be known ; and if the statute contained no other provisions pointing to that

construction, a reasonable view of this provision requiring the corporation to make the necessary passes and crossings would seem to be, that the necessary passes and crossings intended were not merely such as the land-owner might be able to show to a jury were necessary, but such as, being in fact necessary, he had brought specifically to the notice of the corporation, and claimed of them that they should be constructed, and that consequently the action could not be maintained by him upon proof that he needed a crossing, and had none, or that he needed another or different crossing than such as may have been furnished, without proof also that he had notified the corporation of the crossing which he needed, and claimed of them to make it.

In the absence of any further statutory provision on the subject, this would seem to be a just and reasonable view of the liability of the corporation, whether the right of the land-owner to the crossings at their expense is given by the statute, or is held to be one which the law implies in the taking of his land by the action of the railroad commissioners, without any statute provision imposing the duty upon them.

But there are further provisions of the statute which plainly indicate what is meant by it when it speaks of necessary passes and crossings. After declaring that the corporation shall make and maintain all necessary passes, guards and crossings, the statute, sec. 5, chap. 593, provides that in case the parties cannot agree upon the place, number and manner of construction, the land-owner may apply, by petition, to three disinterested justices of the peace, two of whom are to be of the quorum, to be designated, one by each party and the third by the two so selected, and their report, made upon notice and hearing, and filed with the town-clerk, shall determine the matter. In this provision the act contemplates a negotiation between the parties in reference to the number, place and manner of construction of the passes and crossings required by the owner of the land. If this results in an agreement upon those points, that would show how many, where and of what kind were necessary. If not conclusive upon the corporation in an action against them for dama-

ges resulting from their failure to construct them according to the agreement, at least it would be evidence to the jury that the corporation had been notified of the extent and nature of the conveniences required, and of the claim of the land-owner for their construction ; and if, upon the whole evidence upon that point, including that derived from the agreement, they should be found to be necessary, the action would be sustained.

In case no agreement should be made, a fair construction of the provision which authorizes the land-owner to apply to the justices, requires that this should be held to be the only mode of determining where and how many crossings and passes should be constructed, and that, consequently, without an agreement of the parties the corporation cannot be made liable for not constructing passes or crossings at other places than where they are constructed, except upon proof that such application has been made, and the places for making them determined by the report. The object of this provision is manifestly to prescribe a plain and easy method for deciding conclusively, in case of disagreement between the parties, at what points the land-owner needs passes and crossings, and thus relieve him from the embarrassment of commencing a suit for damages resulting from the want of them at those points, at the expense and upon the uncertainties and hazards attending the trial of that question before the jury. The act, therefore, provides that he may apply to the justices, and have it in the outset, by their report. The reasons, however, which exist for relieving the land-owner from this embarrassment, equally apply to the corporation in defending against a suit upon the ground that a crossing is not needed as claimed. If the owner of the land insists upon a crossing at a point where they may deem it unnecessary, and he should not choose to apply to the justices, their only alternative, upon the construction that the provision of the statute was ·designed for his relief alone, would be to make the crossing, or take their chance before the jury upon the trial of an action for damages. The other view of the statute places the parties in this respect upon equal ground.

It is to be observed that in specifying the powers and authority of the justices, the act does not, in terms, include that of deciding upon the manner of constructing the crossings and passes. The language of the act is, " the justices shall examine and determine the place or places where, and the time in which such passes, guards or crossings shall be constructed." A doubt may be suggested whether it was not intended to limit the power of the justices to the decision of place and time only, and to exclude the right to decide upon the manner of construction. Upon this view there would seem to be no ground for holding that the report of the justices, establishing the manner of construction, was necessary to enable the land-owner to maintain an action for the insufficiency or unsuitableness of the pass or crossing in the mode of its construction. No good reason can be perceived for such distinction, and it is inconsistent with the preceding provision, which gives to the land-owner the right to apply to the justices, upon his being unable to agree with the corporation upon the manner of construction, no less than upon the place. The expression, " *such* passes, guards or farm-crossings," used in connection with the words employed to express the power of the justices to decide upon the place, must be understood to refer to the guards, passes and crossings mentioned in the preceding part of the section, in relation to the place or manner of constructing, as to which the parties may be unable to agree. So understood, the act empowers the justices to establish the place for such a crossing as may have been the subject of disagreement between the parties, in reference to its manner of construction, and thus, by fair implication, confers the power of deciding upon the manner as well as the place of construction. The act is loosely and inartificially drawn, but such is obviously its meaning.

Under this act, then, the land-owner acquires no right to any specific arrangement in the way of passes, guards or crossings, for not constructing which the corporation can be made liable in damages, unless the place, number, and manner of construction have been agreed upon by the parties, or established by the

report of the justices in the manner prescribed in the act. In this case no evidence was offered of any such agreement or report, and the verdict must consequently be set aside, and

*A new trial granted.*